·LOUISVILLE AND NASHVILLE RAILROAD COMPANY
*v.* SMITH, HUGGINS & COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 198.    Argued January 31, 1907.—Decided February 25, 1907.

If a party relies upon a Federal right he must specially set it up.    The mere denial of a carrier, sued for damages to merchandise, that it was bound by contracts of the initial carrier. or that it was the connecting and ultimate carrier of the merchandise and bound " by the law " to receive and forward the merchandise, does not, in the absence of any other reference thereto, raise a Federal question under the Interstate Commerce Act which gives this court jurisdiction to review the judgment under § 709, Rev. Stat.

While the certificate of the presiding judge of a state court can make more certain and specific what is too general and indefinite in the record it cannot give jurisdiction to this court under § 709, Rev. Stat:, where there is nothing in the record in the way of a Federal question to specialize and make definite and certain.

THIS suit was brought in the Chancery Court for the county of Jefferson, State of Tennessee, by defendant in error against. the plaintiff in error and the Southern Railway Company, for damages alleged to have been received by the defendant in error to certain carloads of corn shipped over the Southern Railway Company from certain points· in Tennessee to be delivered to defendant in error or its order at Birmingham, Alabama.

The bill alleged that at the time of the shipments the two

railway companies were common carriers of goods and chattels,
the Southern Railway being the receiving and initial carrier,
and the one with which the contracts were made, and the plain-
tiff in error being the connecting and ultimate carrier, and as
such bound by said contracts and the law relative to common
carriers to receive said cars of corn, and to forward and deliver
them to destination whereunto consigned in good order and
in a reasonable time. It was alleged that one of said com-
panies "breached the said several contracts," whereby the
damage complained of accrued.

The companies filed separate answers. That of the Southern
Railway Company we need not set out. Plaintiff in error, in
its answer, neither admitted nor denied certain of the allega-
tions of the bill, and expressed want of knowledge as to others.
Touching the allegation of the bill, that it was a common
carrier, it admitted that it was such in certain States and
portions of the country where it operated lines of roads, but
denied "that it was the connecting and ultimate carrier of
the carloads of corn alleged to have been delivered to the
Southern Railway Company," denied that it made the con-
tracts or was liable under them, or "that it was bound by
law to receive said alleged carloads of corn and forward and
deliver them to their ultimate destination in good order and
in reasonable time."

The chancellor adjudged that there was no liability on the
part of plaintiff in error, and dismissed the bill as to it. He
held the Southern Railway Company liable for not delivering
the cars, according to its contracts, within a reasonable time,
and, after report by a master to whom the cause was referred,
decreed that complainant have and recover the sum of $1,015.69.
The case was taken to the Court of Chancery Appeals, both
by defendant in error and the Southern Railway Company.
And that court adjudged that the Court of Chancery erred
(1) in adjudging that the Southern Railway Company was
liable for any part of the damages to the corn which accrued
after its arrival upon the delivery tracks of the company in

Birmingham and after notice to the consignees of its arrival; (2) in adjudging that plaintiff in error was not liable for the damages suffered by the corn after its arrival in Birmingham and while it was in the yards prior to being unloaded. The court said:

"This court is of the opinion that the Southern Railway Company is only liable for such portion of the damages as accrued by reason of the delay in transition of the cars shipped, which is fixed by the concurrent finding of the master and chancellor at forty per cent of the entire damages.

"This court is further of the opinion and decrees that the Louisville and Nashville Railroad Company is liable for sixty per cent of the damages reported by the master, being the per cent of damages which accrued while the corn remained undelivered in the yards at Birmingham."

It was accordingly adjudged and decreed that the complainant recover of the Southern Railway Company $415.84, and of the Louisville and Nashville Railroad Company $609.42, being sixty per cent of the recovery awarded by the chancellor, together with interest from May 8, 1905, making a total of $623.73. The plaintiff in error took an appeal to the Supreme Court of the State. It assigned as error the action of the Court of Chancery Appeals (1) "In refusing to find certain uncontradicted facts when specially requested to so find." The facts were set out. (2) That the court erred in holding the company liable for any portion of the alleged damage "because under the facts of the case it was not a connecting carrier and was not bound to handle these shipments." The other errors assigned we are not concerned with. The decree of the Chancery Court of Appeals was affirmed without an opinion by the Supreme Court. The order of affirmance recites that the cause came "on to be heard upon the transcript of the record from the Chancery Court of Jefferson County, the opinion and findings of fact of the Court of Chancery Appeals and the assignment of errors filed to the decree of said Court of Chancery Appeals by the defendant, Louisville and Nash-

ville Railroad Company, and the reply brief of complainants."

The assignments of error in this court are to the effect that the Supreme Court erred in not giving full force and effect to the Interstate Commerce Act, which, it is contended, governed the shipments, and in not disregarding the statutes and decisions of the State in conflict therewith, and in denying the rights claimed by plaintiff in error under the Interstate Commerce Act. And that the court erred in holding that it was the duty of plaintiff in error to switch over its yards and terminals cars tendered to it by the Southern Railway Company; in holding that it did not have the right to discriminate as to freight arriving on its own lines, or could not prefer its own business; in rendering judgment against it because it would not turn over its private switch yards and terminals to a competing road, and because of its refusal to make a through routing with the Southern Railway Company; in holding that it was its duty to switch cars for other roads within its terminals to the exclusion of its own business, the effect being to cause an obstruction to interstate commerce and an interference with the paramount duties to which it was subjected by the Constitution and laws of the United States.

Other facts will appear in the opinion.

*Mr. James B. Wright*, with whom *Mr. John H. Frantz* was on the brief, for plaintiff in error:

Complainants' bill in this case charges that the goods were delivered to the Southern Railway Company at various East Tennessee points and consigned to Birmingham, Alabama, which allegations in themselves make the subject matter of this lawsuit a subject of interstate commerce.

The Louisville & Nashville Railroad Company interposed a general denial and that sufficiently raised the Federal question even if it should be held necessary to raise it in the pleadings.

Even though the state court did not in its opinion expressly refer to the Federal Constitution, if the bill of affirmance

necessarily denied Federal rights claimed by the defendant the writ of error will lie. *Roby* v. *Colehour*, 146 U. S. 153; *Green Bay &c. Co.* v. *Patten Paper Co.*, 172 U. S. 58.

This court has jurisdiction in error over a judgment of the state court when it necessarily involves the decision of the question, raised in the appellate court for the first time and noticed in its opinion, whether a statute of the State conflicts with the Constitution of the United States. *Arrowsmith* v. *Harmoning*, 118 U. S. 19; *Chicago L. Co.* v. *Needles*, 113 U. S. 574; *McCullough* v. *Virginia*, 172 U. S. 102; *Chapman* v. *Crane*, 123 U. S. 540; *Green Bay &c. Co.* v. *Patten Paper Co.*, 172 U. S. 58.

The Federal question is involved if the effect of the state decision is to construe the act alleged to violate the Federal Constitution although the state court does not mention the statute. *Houston & T. C. R. R. Co.* v. *Texas*, 177 U. S. 66.

It is not always necessary that the Federal question should appear affirmatively on the record or in the opinion if an adjudication of such question was necessarily involved in the disposition of the case by the state court. *Kaukauna Water Power Co.* v. *Green Bay Canal Co.*, 142 U. S. 254; *Snell* v. *Chicago*, 152 U. S. 191.

If it appears from the record by clear and necessary intendment that the Federal question must have been directly involved so that the state court could not have given judgment without deciding it that will be sufficient to give jurisdiction. *Powell* v. *Brunswick County*, 150 U. S. 433; *Armstrong* v. *Athens County*, 16 Pet. 284.

*Mr. C. T. Rankin,* for defendant in error, submitted:

The findings of the Court of Chancery Appeals are conclusive upon the Supreme Court of Tennessee as to the facts of the case; and that court can not look behind the findings, to the depositions, or any matter of evidence. Acts 1895, Ch. 76, § 11, creating Court of Chancery Appeals (Shannon's Code, §§ 6312, 6327).

Under this statute, the Supreme Court of Tennessee has repeatedly held that the case must be tried by it alone on the findings of the Court of Appeals; and that the decree of the Court of Appeals must be shown by the facts appearing in its findings to be erroneous. *Hale* v. *Hale,* 99 Tennessee, 513; *Carver* v. *Maxwell,* 110 Tennessee, 77; *Woodward* v. *Bird,* 105 Tennessee, 673.

This finding of facts is equally conclusive upon this court. It is well settled. that on writ of error to a state court, this court will not review the findings of fact by the state court. *K. & H. Bridge Co.* v. *Illinois,* 175 U. S. 626, 635; *Jenkins* v. *Neff,* 186 U. S. 230, 238.

An examination of the opinion and findings of facts of the Court of Chancery Appeals and its decree, together with the decree of the Supreme Court, which is one of simple affirmance, will show that those courts did not consider or pass upon any Federal question whatever, and that the Interstate Commerce Act invoked has no application.

MR. JUSTICE MCKENNA, after making the foregoing statement, delivered the opinion of the court.

A motion is made to dismiss the writ of error, on the ground that no Federal question was raised in the state courts or decided by them. In opposition to the motion plaintiff in error contends that the allegations of the bill and its denial thereof sufficiently raise a Federal question, and that the courts of the State, in rendering judgment against plaintiff in error, necessarily decided that question. And it is further contended that even if those courts did not pass on the Federal question, their failure or refusal to do so is equivalent to a decision against the Federal rights involved. A number of cases are cited to sustain these propositions. But is the basis of the propositions sound? In other words, was a Federal question raised, or, if raised, ignored? First, as to the pleadings. The bill charges a breach of the contracts of ship-

ment by one or the other of the railway companies who, the bill alleges, were connecting common carriers, and as such bound by the contracts and the law relative to common carriers to receive and forward to destination the goods shipped in good order and in a reasonable time. Plaintiff in error admitted that it was a common carrier in some States, but was not a connecting and ultimate carrier of the corn in question, denied that it was bound by the contracts, and denied that "it was bound by law" to receive the corn and forward and deliver it to its ultimate destination. And this denial, it is insisted, raised a Federal question. We do not think so. The denial was of a legal conclusion resulting from the facts alleged, and added nothing to them. Besides, if a party relies upon a Federal right, he must specially set it up, and a denial of liability under the law is not a compliance with that requirement. For this we need not cite cases.

Was a Federal question decided or ignored? To answer the question a review of the proceedings is necessary. The chancery court held that, as between the complainant and plaintiff in error, there was no liability upon the part of the latter. The rights of the railway companies, between themselves, the court said, need not be determined. The opinion and findings of the Chancery Court of Appeals are very elaborate. They state the issue, the proceedings in and the judgment of the chancery court and recite that—

"Now, it appears that the Louisville and Nashville Railway denies any liability for its refusal to receive corn shipped over the Southern Railway after its arrival at Birmingham and deliver it over its terminal tracks to the American Mill and Elevator Company, to whom the corn had been sold.

"Of course, this denial is predicated upon the idea that it was not a connecting carrier in handling the shipments of corn involved in this case, or that it was under any obligation respecting the same."

Passing on these denials the court said that at the time of the shipments the Southern Railway Company was placing

shipments, as it was requested, upon the spur track of plaintiff in error, and that the latter was accustomed to receive them and remove them to places where they were to be delivered; and this was its custom for years, and until about the time or just before the corn reached Birmingham, "it was a part of its business and a daily occurrence to receive and remove such cars of freight." And this was done for all persons offering them and without discrimination. For this service it received compensation. The court, however, also found that plaintiff in error "placed an embargo upon the receipt or handling of such cars, November 13, 1902, after the complainant had contracted to sell the carloads of corn and after most of them were shipped."

The contention of the Louisville and Nashville Railroad Company, the court stated as follows:

"The contention of the Louisville and Nashville Railroad Company, reduced to its simplest statement, is that it was not bound to receive these cars of corn and place them.

"This insistence on its part rests upon the proposition that, in the matter of handling the cars of other roads in its yards or over its spur tracks, it was not a common carrier, but simply a private carrier, and that this being so, it had the right to refuse to receive and handle these cars, and as a corollary to this proposition, that it had the right to discriminate between freight arriving in Birmingham over its lines and freight arriving over other lines, and could give preference between those that it chose to serve in this business."

The court decided against the contention, and that the company, by reason of its practice in handling freight, "assumed with respect thereto the character of a common carrier, and hence incurred the duties and liabilities of such character." The court added:

"The result is that we are of opinion that the Louisville and Nashville Railway Company was bound, by virtue of its previous course of business, to accept these cars of corn and deliver them to their destination on its terminal or spur

tracks, and that by reason of its failure to do so, it is liable for all damages resulting from its failure, - . . ."

There was a petition for an additional finding of fact and a rehearing, which the court said would take in the neighborhood of one hundred pages of typewritten information to set out and answer in the form in which they were presented. Some, however, were granted; some qualified. We give only those which we think are relevant. The fifteenth request was that the court set out in full from the evidence, which was, it was said, uncontradicted, the conditions which caused the embargo to be laid by plaintiff in error against switching. The evidence was set out. The court, answering the request, said:

"The simple fact in connection with this matter is that the Louisville and Nashville Railroad Company declined to receive these cars of corn and deliver them to their destination on their spur or side tracks, because it deemed it to its advantage to use its said tracks for and in its own special business."

The twenty-fifth request was "that the terminals and equipment of the Louisville and Nashville Railroad Company at that time were sufficient under ordinary circumstances and conditions." In granting this request the court remarked:

"The twenty-fifth request is granted, with the statement that in our opinion, based upon the evidence as we construe it, the Louisville and Nashville Railroad Company could have handled this corn and delivered it to its destination much sooner than it did had it not preferred other business, and even with that business, with the energetic appliance of all the means and facilities at its command."

It will be seen from this statement of the case that there is not a word in it which refers to the Interstate Commerce Act or the assertion of any rights under that act. Plaintiff in error accounts for the want of explicit statement on the ground that the action was instituted and tried, until the decision of the chancery court, upon the theory that the Southern Railway Company and plaintiff in error were "connecting car-

riers," and that this theory of the case having been disproved
and the appeal dismissed as to plaintiff in error, complainant
(defendant in error) shifted its position, and under the broad
practice and pleading in the state court was allowed to pro-
ceed and procure judgment upon the theory that plaintiff
in error had discriminated against defendant in error by pre-
ferring its own business, that it had failed to furnish equal
facilities for interchange as to this shipment, and that, on
account of its previous switching arrangements with the
Southern Railway Company, it had no right to refuse to
"switch" the cars over its terminals. The record furnishes
no justification for this contention. The bill charged the
railroad companies as being connecting common carriers,
plaintiff in error being the ultimate carrier, and that both
were bound by the contracts made, and bound to carry the
corn from the points of shipment to destination. Plaintiff
in error denied these allegations, as we have seen, and on the
issue thus formed proof was taken.

The chancery court found, it is true, in favor of plaintiff
in error. The case was taken to the Court of Chancery Appeals,
where it was heard, the record recites, "upon the transcript
of the record from the Chancery Court of Jefferson County
and upon the assignments of error and briefs of counsel."
In other words, the Court of Chancery Appeals heard the
case as made in the chancery court. What the Chancery Court
of Appeals said of the issues and contentions of the parties
we have already stated, and we need only repeat that the
assignment of error by complainant (defendant in error)
in the Chancery Court of Appeals was general, and showed
no change in the theory upon which the case was brought
and conducted. It was that the chancery court erred in
holding that there was no liability on the part of the Louisville
and Nashville Railroad Company, and in refusing to hold
that it was liable either alone or jointly with the other com-
pany. And the court said that the denial of plaintiff in error
of liability was "predicated upon the idea that it was not a

connecting carrier in handling the shipments of corn involved in this case, or that it was under no obligations respecting the same." It is true the court also said that plaintiff in error contended "that it had the right to discriminate between freight arriving in Birmingham over its lines and freight arriving over other lines, and could give preference between those that it chose to serve in this business," but this contention, it was also said, was "as a corollary" to the proposition that plaintiff in error was not a common carrier, but simply a private carrier. The court determined against this proposition, and in consequence adjudged plaintiff in error liable. In other words, the judgment of the court was in exact response to the pleading. Nor was there any change on appeal to the Supreme Court. The railroad company's second assignment of error was (and it is the only one with which we can concern ourselves) that it was not "liable for any portion of the alleged damage to these various shipments, because under the facts of this case it was not a connecting carrier and was not bound to handle these shipments. . . ."

There is in the printed record a certificate of the Chief Justice of the Supreme Court of the State, given when the writ of error was applied for, to the effect that the Supreme Court of the State was of opinion "that the statutes and laws of Tennessee were not in conflict with the act of Congress regulating interstate commerce, and that the act of Congress did not control the shipments in controversy." Counsel concedes the rule to be that the certificate of the presiding judge of a state court is insufficient to give us jurisdiction, but insists that it can make more certain and specific what is too general and indefinite in the record. There is no doubt of the rule, but there is nothing in this record to justify its application. There is nothing in the record to specialize. It is less open to conjecture than the certificate. As no Federal question was raised, the motion to dismiss must be granted.

*It is so ordered.*